# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

December 18, 2023

Lyle W. Cayce
Clerk

———————

No. 22-20543

———————

John Doe, through Next Friend Jane Roe,

*Plaintiff—Appellant,*

*versus*

Snap, Incorporated, *doing business as* Snapchat, L.L.C., *doing business as* Snap, L.L.C.,

*Defendant—Appellee.*

———————————————

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:22-CV-590

———————————————

## PUBLISHED ORDER

Before Higginbotham, Graves, and Douglas, *Circuit Judges.*

Per Curiam:

    The court having been polled at the request of one of its members, and a majority of the judges who are in regular active service and not disqualified not having voted in favor (Fed. R. App. P. 35 and 5th Cir. R. 35), on the Court's own motion, rehearing en banc is DENIED.

    In the en banc poll, seven judges voted in favor of rehearing (Judges Smith, Elrod, Willett, Duncan, Engelhardt, Oldham, and Wilson), and eight judges voted against rehearing (Chief Judge Richman and Judges Jones,

No. 22-20543

Stewart, Southwick, Haynes, Graves, Higginson, and Douglas). Judges Ho and Ramirez did not participate in the poll.

22-20543

Jennifer Walker Elrod, *Circuit Judge*, joined by Smith, Willett, Duncan, Engelhardt, Oldham, and Wilson, *Circuit Judges*, dissenting from denial of rehearing en banc:

John Doe was sexually abused by his high school teacher when he was 15 years old.[1]  His teacher used Snapchat to send him sexually explicit material.  Doe sought to hold Snap, Inc. (the company that owns Snapchat) accountable for its alleged encouragement of that abuse.  Bound by our circuit's atextual interpretation of Section 230 of the Communications Decency Act, the district court and a panel of this court rejected his claims at the motion to dismiss stage.

The *en banc* court, by a margin of one, voted against revisiting our erroneous interpretation of Section 230, leaving in place sweeping immunity for social media companies that the text cannot possibly bear.  That expansive immunity is the result of "[a]dopting the too-common practice of reading extra immunity into statues where it does not belong" and "rel[ying] on policy and purpose arguments to grant sweeping protection to Internet platforms." *Malwarebytes, Inc. v. Enigma Software Grp. USA, LLC*, 141 S. Ct. 13, 15 (2020) (internal citation omitted) (Thomas, J., statement respecting denial of certiorari).  Declining to reconsider this atextual immunity was a mistake.

I

The analysis must begin with the text.  Section 230 states in relevant part that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another

---

[1] Doe's teacher, Bonnie Guess-Mazock, pleaded guilty to sexual assault.  *See* Plea Acceptance, *Texas v. Guess-Mazock*, No. 22-05-06072 (359th Dist. Ct., Montgomery County, Tex. May 12, 2022).

information content provider." 47 U.S.C. § 230(c)(1). It further prohibits interactive computer services from being held liable simply for restricting access to "material that the provider or user considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable . . ." or for providing individual users with the capability to filter such content themselves. 47 U.S.C. § 230(c)(2). In other words, Section 230 closes off one avenue of liability by preventing courts from treating platforms as the "publishers or speakers" of third-party content.[2] Sub-section (c)(1) and (c)(2) say nothing about other avenues to liability such as distributor liability or liability for the platforms' own conduct.

In fact, Section 502 of the Communications Decency Act expressly authorizes distributor liability for knowingly displaying obscene material to minors. 47 U.S.C. § 223(d); *see* Adam Candeub, *Reading Section 230 as Written*, 1 J. of Free Speech L. 139, 157 (2021) (citing *Malwarebytes*, 141 S. Ct. at 15 (Thomas, J., statement respecting denial of certiorari)). This includes displaying content created by a third-party. It strains credulity to imagine that Congress would simultaneously impose distributor liability on platforms in one context, and in the same statute immunize them from that very liability. *See Malwarebytes*, 141 S. Ct. at 15 (Thomas, J., statement respecting denial of certiorari).

Without regard for this text and structure, and flirting dangerously with legislative purpose, our court interpreted Section 230 over a decade ago to provide broad-based immunity, including against design defect liability and distributor liability. *Doe v. MySpace, Inc.*, 528 F.3d 413, 421 (5th Cir.

---

[2] Publishers are traditionally liable for what they publish as if it were their own speech. Distributors are liable for illicit conduct that they had knowledge of. *See* Eugene Volokh, *Treating Social Media Platforms Like Common Carriers?*, 1 J. of Free Speech L. 377, 455 (2021) (explaining the distinction between publishers and distributors).

22-20543

2008) ("To achieve that policy goal, Congress provided broad immunity under the CDA to Web-based service providers.").

"Courts have also departed from the most natural reading of the text by giving Internet companies immunity for their own content." *Malwarebytes*, 141 S. Ct. at 16 (Thomas, J., statement respecting denial of certiorari). For example, our circuit previously held that Section 230 protects platforms from traditional design defect claims. *See MySpace*, 528 F.3d at 421 ("[Plaintiffs'] claims are barred by the CDA, notwithstanding their assertion that they only seek to hold MySpace liable for its failure to implement measures that would have prevented Julie Doe from communicating with" her eventual attacker.). This is notably different from the Ninth Circuit's interpretation, which has allowed some design defect claims to pass the motion to dismiss stage. *See Lemmon v. Snap, Inc.*, 995 F.3d 1085, 1094 (9th Cir. 2021) (citation omitted) (holding that Snap is not entitled to immunity under Section 230 for claims arising out of the "'predictable consequences of' designing Snapchat in such a way that it allegedly encourages dangerous behavior").

Immunity from design defect claims is neither textually supported nor logical because such claims fundamentally revolve around the platforms' conduct, not third-party conduct. Nowhere in its text does Section 230 provide immunity for the platforms' own conduct. Here, Doe brings a design defect claim. He alleges that Snap should have stronger age-verification requirements to help shield minors from potential predators. He further alleges that because "reporting child molesters is not profitable," Snap "buries its head in the sand and remains silent." Product liability claims do not treat platforms as speakers or publishers of content. "Instead, Doe seeks to hold Snap liable for designing its platform to encourage users to lie about their ages and engage in illegal behavior through the disappearing message feature."

That our interpretation of Section 230 is unmoored from the text is reason enough to reconsider it. But it is unmoored also from the background legal principles against which it was enacted.

Congress did not enact Section 230 in a vacuum. Congress used the statutory terms "publisher" and "speaker" against a legal background that recognized the separate category of "distributors." *Malwarebytes*, 141 S. Ct. at 14 (Thomas, J., statement respecting denial of certiorari). Just a year prior to the enactment of the Communications Decency Act, for example, a New York state court held an internet message board liable as a publisher of the defamatory comments made by third-party users of the site, declining to treat the platform as a distributor. *Stratton Oakmont, Inc. v. Prodigy Servs. Co.*, 1995 WL 323710, *3–*4 (Sup. Ct. N.Y., May 24, 1995). The distinction is relevant because distributors are only liable for illegal content of which they had or should have had knowledge. Section 230 merely directs courts not to treat platforms as publishers of third-party content.

In addition to pressing a design defect claim, Doe urged this court to treat Snap as a distributor and not as a publisher. Doe states, correctly, that Section 230 was enacted "to provide immunity for creators and publishers of information, not distributors." The Communications Decency Act itself authorizes liability for platforms as distributors. 47 U.S.C. § 223(d). But again, our overbroad reading of Section 230 renders Doe's claim dead in the water.

Congress drafted a statute precluding a particular avenue to liability, while leaving others, such as design defect and distributor liability, untouched. Our court upset that balance, leaving plaintiffs like Doe without recourse for a host of conduct Congress did not include in the text.

## II

Deviation from statutory text is often justified by some using an appeal to the needs of a changing world. *See, e.g.*, *Hively v. Ivy Tech. Cmty. Coll. of Ind.*, 853 F.3d 339, 352 (7th Cir. 2017) (Posner, J. concurring) ("[I]nterpretation can mean giving a fresh meaning to a statement . . . a meaning that infuses the statement with vitality and significance today. . . . [C]all it judicial interpretive updating . . . ."). Our jurisprudence on Section 230 perhaps shows why such attempts at judicial policymaking are as futile as they are misguided. For here, our atextual transformation of Section 230 into a blunt instrument conferring near-total immunity has rendered it particularly ill-suited to the realities of the modern internet.

As the internet has exploded, internet service providers have moved from "passive facilitators to active operators."[3] They monitor and monetize content, while simultaneously promising to protect young and vulnerable users. For example, Snap itself holds itself out to advertisers as having the capability to target users based on "location demographics, interests, devices . . . and more!"[4]

Today's "interactive computer services" are no longer the big bulletin boards of the past. They function nothing like a phone line. Rather, they are complex operations offering highly curated content. Section 230 defines information content providers as "any person or entity that is

---

[3] Large, modern-day internet platforms are more than willing to remove, suppress, flag, amplify, promote, and otherwise curate the content on their sites in order to cultivate specific messages. *See Missouri v. Biden*, 83 F.4th 350, 392 (5th Cir. 2023), *cert. granted*, No. 23-411, 2023 WL 6935337 (S. Ct. Oct. 20, 2023) (finding numerous platforms likely restricted protected speech on their sites as a result of government pressure).

[4] Complaint, *Doe v. Snap, Inc.*, 4:22-cv-00590, 11 (S.D. Tex. 2022) (citing Snapchat, Why Advertise on Snapchat?, Snap, Inc., shorturl.at/pHP23 (last visited February 16, 2022)).

22-20543

responsible, in whole *or in part*, for the creation or development of information provided through the Internet or any other interactive computer service." 47 U.S.C. § 230(f)(3) (emphasis added). Where platforms take this content curation a step further, so as to become content *creation*, they cannot be shielded from liability.

Power must be tempered by accountability. But this is not what our circuit's interpretation of Section 230 does. On the one hand, platforms have developed the ability to monitor and control how all of us use the internet, exercising a power reminiscent of an Orwellian nightmare.[5] On the other, they are shielded as mere forums for information, which cannot themselves be held to account for any harms that result. This imbalance is in dire need of correction by returning to the statutory text. Doe alleges that Snap monitors content in order to "prohibit . . . explicit content." Where such oversight results in knowledge of illegal content, platforms should not be shielded from liability as distributors.

III

The Supreme Court has repeatedly warned us that a "denial of certiorari does not constitute an expression of any opinion on the merits." *Boumediene v. Bush*, 549 U.S. 1328, 1329 (2007) (Stevens & Kennedy, JJ., statement respecting denial of certiorari). We missed an opportunity to heed the Supreme Court's warning. As a result, it is once again up to our nation's highest court to properly interpret the statutory language enacted by Congress in the Communications Decency Act.

---

[5] "Always the eyes watching you and the voice enveloping you. Asleep or awake, working or eating, indoors or out of doors, in the bath or in bed – no escape. Nothing was your own except the few cubic centimetres inside your skull." George Orwell, 1984, 25 (Penguin Classics, 2021).

"Paring back the sweeping immunity courts have read into § 230 would not necessarily render defendants liable for online misconduct. It simply would give plaintiffs a chance to raise their claims in the first place." *Malwarebytes*, 141 S. Ct. at 18 (Thomas, J., statement respecting denial of certiorari). Doe's claims have been denied under the Communications Decency Act at the motion to dismiss stage, without even the chance for discovery. Importantly, we have categorically barred not only Doe, but every other plaintiff from litigating their claims against internet platforms. Before granting such powerful immunity, "we should be certain that is what the law demands." *Id.* I am far from certain.

\*     \*     \*

With respect for my colleagues on our divided court, we should have granted rehearing *en banc* to reconsider our interpretation of Section 230 of the Communications Decency Act.